370 P.2d 946

**STATE of Arizona, Appellee,**

v.

**William W. MILLS, Appellant.**

No. 1220.

Supreme Court of Arizona,

En Banc.

April 25, 1962.

Earl Terman, Tucson, for appellant.

Robert W. Pickrell, Atty. Gen., Stirley Newell, Asst. Atty. Gen., Harry Ackerman, County Atty. of Pima County, by Sidney L. Cain, Deputy County Atty., for State of Arizona, appellee.

UDALL, Vice Chief Justice.

Defendant appeals from a felony conviction of theft by false pretenses.[1] The matter was tried by the court pursuant to Article VI, section 17 of the Arizona Constitution, A.R.S. which provides in pertinent part that:

"* * * The right of jury trial as provided by this constitution shall re-

main inviolate, but trial by jury may be waived by the parties in any civil cause or by the parties with the consent of the court in any criminal cause * * *." (Emphasis added.) [2]

The material facts, viewed "* * * in the light most favorable to sustaining the conviction," State v. Evans, 88 Ariz. 364, 366, 356 P.2d 1106, 1107 (1960) are as follows. On February 25, 1959 defendant, the complaining witness and her husband, Mr. and Mrs. William Steinert, signed a "Deposit Receipt and Agreement" for the sale of a house and lot at 1202 E. Easy Street in Tucson by defendant to the Steinerts. This agreement recited a downpayment of $100 and called for $4,500 "to be paid about March 2, 1959" with the balance of the purchase price payable upon completion of the house then under construction. The agreement further provided that defendant would furnish the Steinerts a title insurance policy.

This cash transaction was concluded on July 10, 1959 at which time defendant deeded the property to the Steinerts subject only to taxes for the last half of 1959 and any and all encumbrances of record. Mrs. Steinert[3] testified that on several oc-

---

1. A.R.S. § 13–661 (1956) defines theft to include:
"3. Knowingly and designingly, by any false or fraudulent representation or pretense, defrauding any other person of money, labor or property, whether real or personal."

2. This provision in the Arizona Constitution was adopted at the general election on November 8, 1960.

3. Mr. Steinert died in 1960.

casions during the negotiations defendant was asked if the property was "clear" and that defendant assured the Steinerts that "everything is clear, that there is no mortgage or no lien or anything on it, and that we have nothing to worry about."

However, during the entire course of these negotiations there was and still is outstanding a $5,917 mortgage on the property in favor of Mr. Nicholas Karabatsos.[4] The mortgagee, Karabatsos, testified that "around the 22nd of July," 1959 (twelve days after the property had been deeded to the Steinerts) defendant told Karabatsos that he had been unable to sell the house as of that time. Karabatsos also testified that he first met Mrs. Steinert in February of 1961 after noticing a "For Sale" sign in the window of her home. Upon learning from her that defendant had sold the property in July of 1959 Karabatsos confronted defendant and asked to be paid. Defendant first replied that the sale to the Steinerts was "in process" but then admitted that " * * * I can't give you the money right now."

At the trial Mrs. Steinert also testified that defendant on numerous occasions promised to deliver the title insurance policy provided for in the "Deposit Receipt and Agreement." This he never did. Defendant took the stand at trial and generally confirmed all of the above but denied that he had made any affirmative representation that the property was free of encumbrances.

On appeal defendant first contends that the trial court lacked power to consent to the jury trial waiver on the ground that Article VI, section 17, supra, is not self-executing. But he offers no suggestion as to just what legislative action would be necessary to effectuate the right provided by the constitutional provision. "The presumption is in general that provisions of state constitutions are self-executing." Morgan v. Board of Sup'rs, 67 Ariz. 133, 140, 192 P.2d 236, 240 (1948). See also Miller v. Wilson, 59 Ariz. 403, 407–08, 129 P.2d 668, 670–71 (1942). Here the constitutional wording does not merely express a policy or general principle. It is simple, direct and needs no legislative implementation. That none was contemplated is strongly suggested by the use of the words "as may be provided by law" in numerous *other* sections of Article VI. We hold that Article VI, section 17 is self-executing.

Defendant next urges that certain remarks of the trial judge indicated he was prejudiced against defendant. After the evidence was in and before rendering judgment the trial judge made some general findings. Included in these were the following comments:

4. The Karabatsos mortgage was recorded on November 3, 1958.

"Incidentally, I don't expect counsel to know this, but the Court has been in the title business for some time. I owned a title company of my own for quite awhile, and I have been very conversant with the title procedures, and going through that, I handled it, and still own an interest in the title company."

It is asserted that because the transaction between defendant and the Steinerts was not escrowed through one of the Tucson title companies the trial judge, who was "accustomed to 'more proper' methods of transacting a sale of a house between two parties" (appellant's opening brief at 18–19), was prejudiced.

◼ Defendant made no protest regarding these remarks when they were uttered. The proper procedure in cases where grounds for bias or prejudice are not discovered until some time during the course of a trial is to request a hearing on the matter then and there. Cf., Hendrickson v. Superior Court, 85 Ariz. 10, 13, 330 P.2d 507, 509, 73 A.L.R.2d 1235 (1958).

◼ Absent any such request the determination of self bias or prejudice is discretionary with the trial judge. That discretion was not abused here. Indeed, when read with the other observations made by the trial judge it is clear that the remarks in question were made only to inform counsel that the court was familiar with the technical language and documents being discussed. Finally, even if the trial judge were biased in favor of escrowing such transactions through title companies he would not be disqualified as a matter of law. For it is generally held that "bias or prejudice does not refer to any views a judge may entertain toward the subject matter involved in the case." 30A Am.Jur. Judges § 171 (1958) at 88.

◼ Also advanced by defendant as reversible error was the failure of the trial court to make specific findings of fact on every material issue. The trial court did make a general finding that defendant was "guilty as charged" and, as previously stated, discussed the evidence at the close of the case in an effort to give counsel and defendant "some idea how the court arrived at the particular ruling it [made] * * *." No Arizona constitutional provision, statute or rule of procedure requires even that much. And in the absence of any of these it has been held that written findings of fact are not required in a criminal trial constitutionally permitted to be tried without a jury. See People v. Esposti, 82 Cal. App.2d 76, 80, 185 P.2d 866, 868 (1947). Accordingly, the trial judge did not commit error by failing to make specific findings of fact.

Defendant's fourth contention is that the following question was erroneously al-

lowed to be answered (by Mrs. Steinert) after objection by defendant's counsel:

"Q. Would you have parted with your money to purchase this house if you had known of the existence of any mortgage?"

Mrs. Steinert replied: "No, I wouldn't." Defendant then argues that in the absence of such testimony the element of *reliance* was not proved by the State.

■ As stated in 47 Cal.Jur.2d Theft § 154 (1959) at 608: "In a prosecution for theft by false pretenses, the testimony of the victim is ordinarily the best evidence of the effect the alleged misrepresentations had on him * * *." Moreover the form of question asked here has been held proper by every court to which the matter has been squarely presented. See, e. g., Commonwealth v. Greenberg, 339 Mass. 557, 160 N.E.2d 181 (1959).[5] There was, therefore,

no error in permitting the above question to be answered. And aside from this and other affirmative testimony by Mrs. Steinert[6] there was evidence of reliance in the very fact of payment of the $9,300 cash by the Steinerts to defendant.

■ Finally defendant asserts that there was no showing of criminal intent to defraud. True there was here, as in most cases of this nature, no direct evidence of intent to defraud. But the presence of this element of the crime of theft by false pretenses is compellingly inferred from the testimony and facts previously discussed in this opinion. See A.R.S. § 13-131 (1956).

For the reasons above stated the judgment of conviction is affirmed.

BERNSTEIN, C. J., and STRUCK-MEYER, JENNINGS and LOCKWOOD, JJ., concur.

---

5. In Greenberg the Supreme Judicial Court of Massachusetts held that:
"bank officials and others were properly allowed to testify that in making or authorizing loans to Greenberg and Maitland they relied on the validity of the collateral offered and that if they had known the collateral to be fictitious they would not have approved the loans." 339 Mass. at 580, 160 N.E.2d at 196.

6. For example, shortly before the disputed question was asked she answered, without objection, the question:
"Q. Mrs. Steinert, did you believe Mr. Mills when he told you on these various occasions that the title was clear and that there were no mortgages?
by saying:
"A. Yes, I had a lot of confidence in him."