405 P.2d 460

**STATE of Arizona, Appellee,**

**v.**

**Duane CARPENTER and Mary Louise Carpenter, Appellants.***

**No. 2 CA–CR 2.**

Court of Appeals of Arizona.

Sept. 10, 1965.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 1422. The matter was referred to this Court pursuant to § 12–120.23 A.R.S.

Robert W. Pickrell, Former Atty. Gen., Darrell F. Smith, Atty. Gen., Phoenix, Norman E. Green, County Atty., Pima County, Carl Waag, Deputy County Atty., Pima County, Tucson, for appellee.

Davis & Eppstein, Tucson, Thomas J. Davis, Tucson, of counsel, for appellants.

JACK G. MARKS, Superior Court Judge.

Duane and Mary Louise Carpenter, husband and wife, hereinafter referred to as defendants, jointly appeal from judgments of conviction and sentences entered on October 15, 1963, in Superior Court, Pima County. They were tried by the court sitting without a jury on an information charging four counts as follows:

1. Aggravated assault, a felony (A.R.S. § 13–245, as amended);

2. Contributory dependency, a misdemeanor (A.R.S. § 13–822 and § 13–821, subsec. A, par. 1(g));

3. Neglect of child, a misdemeanor (A.R.S. § 13–801); and

4. Permitting life or health of child to be imperiled by neglect or abuse, a misdemeanor (A.R.S. § 13–842).

Each defendant was found guilty of Counts 1 and 4 as charged in the information and not guilty of the charges in Counts 2 and 3 thereof. The sentences imposed on October 15, 1963, on each defendant were: (a) six months imprisonment in the Pima County Jail to run from August 1, 1963, on Count 4, and (b) imprisonment for a term of not less than four years and not more than five years in the Arizona State Prison, to commence from the day of release from the Pima County Jail, on Count 1. This appeal is directed solely to the convictions of the charges of aggravated assault.

Reviewing the evidence in a light most favorable to sustain the convictions, the pertinent facts may be summarized as follows: At about eight o'clock on the evening of June 21, 1963, an officer of the Tucson Police Department was dispatched to the defendants' residence at 155 West District Street, Tucson. On arrival he found the defendant Duane Carpenter sitting in the living room near Robert Eugene Carpenter, his 52-day-old son, who was lying on a car seat. He observed that a white substance was exuding from the infant's mouth and nose and promptly notified the Tucson Fire Department Rescue Squad that a resuscitator was required immediately. After the resuscitator had been used, the infant was taken to St. Mary's Hospital for treatment. Examination revealed that he was suffering from pneumonia, malnutrition, contusions and numerous fractured bones, to wit: at least two skull fractures, at least two major fractures of the extremities and six rib fractures. The fractures were attributed to the application of external force upon his body at various times between May 17, 1963, and June 21, 1963. The child's condition upon arrival at the hospital was deemed critical.

Dr. Daniel S. Forsyth, who examined the infant on June 22, testified with regard to the above described illnesses and injuries. The infant had previously been examined at the age of 17 days on May 17 by Dr. Ross Chapin, a local practicing physician. Dr. Chapin's examination disclosed none of these illnesses and injuries. During the intervening 35-day period, Mary Carpenter informed Dr. Chapin via telephone on May 27 of an injury to the baby's face and head which had occurred on the previous day. However, the child was not seen by the doctor.

On or about June 9, an incident occurred at Richie's Drive-In Restaurant at East 22d Street, Tucson, which incident is the only direct evidence linking the defendants to the baby's injuries. Two waitresses, Edna Funk and Connie Padgett, who served the defendants, observed that the infant was lying on the back seat of the defendants' car when the defendant Duane hit his wife. The wife thereupon reached back, took the infant in her hands and threw him at Duane. The infant fell between the father and the steering wheel. Connie Padgett testified that she " * * * literally heaved it at him." Thereupon Duane took the infant by one arm and without turning towards the rear seat, either " * * * tossed it * * * " (Edna's version) or " * * * batted it back * * * " (Connie's version) onto the back seat.

There was no evidence that the infant had ever been out of the custody and control of the defendants from the date of its birth, April 30, 1963, until June 21, 1963.

In the interests of clarity, a brief summary of the procedural aspects of this case is essential. Both defendants were arrested and charged with three counts. The counts were those hereinabove set forth numbered 2, 3, and 4. (For brevity's sake, we shall refer to this as Action No. 1.) The defendants being unable to afford counsel, the trial court appointed one attorney to represent both. The trial was set for September 19, 1963, and a jury was waived. However, on

the day of trial, the trial judge, over defense counsel's objection, dismissed the three misdemeanor counts and directed the county attorney to file a complaint charging aggravated assault in addition to the three misdemeanor counts.

A criminal complaint was filed in Justice Court later the same day charging both defendants with the following offenses: aggravated assault, neglect of child, and permitting the life or health of child to be imperiled by neglect. or abuse. Thereafter on the same day defendants waived a preliminary hearing and were bound over to Superior Court. The information filed in Superior Court by the Pima County Attorney on the following day included the additional misdemeanor count of contributory dependency. (For brevity's sake, we shall refer to this as Action No. 2.) The same trial counsel was reappointed for both defendants, the case was tried and defendants found guilty. For purposes of this appeal, the trial court appointed another attorney who briefed and argued this appeal. To avoid confusion we shall distinguish between them by referring to them as "trial counsel" and "appellate counsel."

1. Art. 2, § 4: "No person shall be deprived of life, liberty, or property without due process of law."
 Art. 2, § 10: "No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."
 Fourteenth Amendment, § 1: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

2. Ibid.

3. A.R.S. § 13-245 (as amended): "Aggravated assault or battery; definition; punishment

The assignments of error set forth are, in essence, as follows:

1. That the trial court erred in failing to dismiss the instant charges on its own motion on the ground that the defendants were placed twice in jeopardy contrary to §§ 4 and 10 of Article 2 of the Arizona Constitution, A.R.S., and the 14th Amendment to the United States Constitution.[1]

2. That the trial judge should have disqualified himself on his own motion because he had dismissed the earlier information on his own motion over the objection of trial counsel and directed a more serious charge to be filed against the defendants, thus denying defendants due process of law contrary to § 4 of Article 2 of the Arizona Constitution and the 14th Amendment to the United States Constitution.[2]

3. That the trial court erred in refusing to grant the defendants' motion for acquittal on the ground that A.R.S. § 13-245, as amended, (a felony) has been impliedly repealed by A.R.S. § 13-842 (a misdemeanor).[3]

A. An assault or battery is aggravated when committed under any of the following circumstances:
1. When the person committing the offense goes into a private home and is there guilty of assault or battery.
2. When committed by a person of robust health or strength upon one who is decrepit.
3. When committed by an adult male upon the person of a female or child, or by an adult female upon the person of a child.
4. When the instrument or means used is such as to inflict disgrace upon the person assaulted, as an assault or battery with a whip or cowhide.
5. When a serious bodily injury is inflicted upon the person assaulted.
6. When committed with a premeditated design and by the use of means calculated to inflict great bodily injury.
B. An aggravated assault or battery shall be punished by a fine of not less than one hundred nor more than two thousand

Without assigning· error in this regard, appellate counsel further contends that the representation of both defendants by the same attorney deprived the defendants of their "right to counsel" as guaranteed by § 4 of Article 2 of the Arizona Constitution[4] and the Sixth Amendment to the United States Constitution.[5] This contention is based on an alleged conflict of interest between the defendants because trial counsel had filed a divorce action on August 20, 1963, for the defendant-wife against the defendant-husband, and then continued to represent both defendants as defense counsel in the criminal action. We shall consider each of these matters in the foregoing order.

### DOUBLE JEOPARDY

We are satisfied that the claim of double jeopardy is without merit. In Action No. 2, the defendants were not in jeopardy a second time as they had not been placed in jeopardy in Action No. 1. This appeal is only with respect to the aggravated assault count which had not been before the court in Action No. 1. However, defendants contend that they· were placed in double jeopardy in violation of their constitutional rights because Count 3 in Action No. 1 (permitting life or health of child to be imperiled by neglect or abuse) is a lesser included offense of Count 1 in Action No. 2 (aggravated assault).

■ An offense is a lesser included offense where all of the elements of such offense are present with others in the offense denominated as the greater offense or where all the elements of an offense are included among the elements of the offense charged. State v. Kuchmak, 159 Ohio St. 363, 112 N.E.2d 371 (1953). The test of a lesser included offense is: where an offense cannot be committed without necessarily committing another offense, the latter is a lesser included offense of the former. People v. Greer, 30 Cal.2d 589, 184 P.2d 512 (1947). More succinctly, our Supreme Court has stated this proposition as follows:

"* * * The test to be applied is simple: Is the first offense one that cannot be committed without necessarily committing the second?" State v. Westbrook, 79 Ariz. 116, 119, 285 P.2d 161, 53 A.L.R.2d 619 (1954).

■ Where a defendant is tried for such lesser included offense he may not thereafter be brought to trial charged with the greater offense. State v. Harvey (No. 1445), 98 Ariz. 70, 402 P.2d 17, decided May 12, 1965; A.R.S. § 13–145. However, if the offense charged in Count 3 in Action No. 1 is not a lesser included offense of the charge in Count 1 of Action No. 2, then prosecution of the latter charge is not barred. State v. Westbrook, supra.

Therefore, the double jeopardy contention must be resolved by a comparison of the elements of (1) aggravated assault and (2) permitting the life or health of a child to be imperiled by neglect or abuse. The

dollars, or by imprisonment in the county jail not to exceed one year, or both, or by imprisonment in the state prison for not less than one nor more than five years."

A.R.S. § 13–842: "Permitting life, health or morals of child to be imperiled by neglect, abuse or immoral associations; punishment

A person having custody of a child who wilfully causes or permits the life of such child to be endangered, its health to be injured or its moral welfare to be imperiled, by neglect, abuse or immoral associations, is guilty of a misdemeanor."

4. See Note 1.

5. Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence."

elements of aggravated assault applicable to the instant case are:

*As to Duane Carpenter:*

1. An assault
2. By an adult male
3. Upon the person of a child; and

*As to Mary Louise Carpenter:*

1. An assault
2. By an adult female
3. Upon the person of a child; or

*As to both defendants:*

1. An assault
2. Inflicting serious bodily harm upon the person assaulted. (A. R.S. § 13–245, as amended)

The elements of the misdemeanor applicable to the case at bar are:

1. A person having custody of a child
2. Wilfully
3. Causing or permitting
4. (a) The life of such child to be endangered, or
 (b) Its health to be injured
5. (a) By neglect, or
 (b) Abuse.
 (A.R.S. § 13–842)

 It is self-evident that the components or elements of the two crimes are dissimilar. We hold that the offense charged in Count 3 of the information in Action No. 1 is not a lesser included offense of the charge of aggravated assault in Action No. 2. Therefore the defendants' contention that their constitutional rights regarding double jeopardy were violated when they stood trial on Count 1 in Action No. 2 after the dismissal of Count 3 in Action No. 1 is without merit. Moreover, even if the one were included in the other, as no evidence had been taken in Action No. 1 double jeopardy did not at-

tach. State v. Blackwell, 65 Nev. 405, 198 P.2d 280 (1948), rehearing denied, 65 Nev. 425, 200 P.2d 698 (1948), cert. denied, 336 U.S. 939, 69 S.Ct. 742, 93 L.Ed. 1097 (1949); People v. Pearl, 272 App.Div. 563, 74 N.Y.S.2d 108 (1947). Trial counsel did not fail in his duty, as asserted by appellate counsel, when he did not raise in Action No. 2 the defense of double jeopardy.

## BIAS

 The defendants contend that the trial judge should have disqualified himself for bias prior to the commencement of the trial of Action No. 2 on October 2, 1963, because of his dismissal of the information in Action No. 1 and his directions to the County Attorney to file a count charging aggravated assault. Between September 20, 1963, the date on which the defendants were arraigned and October 2, 1963, there was sufficient time to apply for a change of judge. Rules 196 to 200, Rules of Criminal Procedure, 17 A.R.S. No such application was made to the trial court. In the absence of such an application the determination of self-bias was discretionary with the trial judge. State v. Mills, 91 Ariz. 206, 370 P.2d 946 (1962). The alleged bias of the trial judge is first raised by appellate counsel. The right to apply for a change of judge is waived if no objection is made to the trial court and it is too late to disqualify the trial judge after he has been allowed to receive evidence. State v. Quintana, 92 Ariz. 308, 376 P.2d 773 (1962). Such objection may not be raised in the first instance on appeal. Smith v. Rabb, 95 Ariz. 49, 386 P.2d 649 (1963). We hold that the trial judge did not err in this regard.

## IMPLIED REPEAL

 The defendants further contend that the trial court erred in refusing to grant the defendants' motion for acquittal on Count 1 on the ground that A.R.S. § 13–245, as amended, has been *impliedly repealed* by A.R.S. § 13–842. Implied re-

peals are not favored and it is only when, by no reasonable construction can two statutes be operative, that the later act repeals the earlier act by implication. Burnside v. Douglas School District No. 27, 33 Ariz. 1, 261 P. 629 (1927). To invoke the doctrine of implied repeal the repugnancy or inconsistency between the provisions of the two statutes must make it apparent that the legislature intended to repeal the earlier law by the later law. State v. Morf, 80 Ariz. 220, 295 P.2d 842 (1956).

■ However, when the provisions of the earlier law (A.R.S. § 13–245, as amended),[6] are not inconsistent with the later law (A.R.S. § 13–842),[7] the aggravated assault statute is continued in force with reference to parents and their children. As has heretofore been demonstrated, the ingredients of the offenses set forth in A.R.S. § 13–245, as amended, and § 13–842 are dissimilar. Therefore, we hold that the latter did not impliedly (nor expressly, as provided in § 2 of Chapter 12, Laws of 1907) repeal the former statute.

### CONFLICT OF INTEREST

Defendants suggest dehors the record that their representation by trial counsel was so inadequate as to constitute a deprivation of the constitutional guarantee of right to counsel. This contention as to ineffectiveness of trial counsel is predicated solely upon the existence of a purported conflict of interest between the defendants because of the pending divorce action and trial counsel's representation of the wife in that action.

■ The record in Action No. 2 shows no awareness on the part of the trial judge that trial counsel was representing Mary Carpenter in the divorce action and had filed a divorce complaint during the pendency of Action No. 1. If the trial judge had been apprised of a potential conflict of interest, this court is convinced that he would not have reappointed the same trial counsel to represent both defendants at the time of their arraignment in Action No. 2. Where there was no objection made or notice given to the trial court of any alleged conflict between the interests of these two defendants, there was no denial of any constitutional right to the effective assistance of counsel. Lott v. United States, 218 F.2d 675 (5th Cir. 1955).

Appellate counsel argues that the mere potentiality of harm to the defendants requires a reversal of their convictions, citing Commonwealth ex rel. Whitling v. Russell, 406 Pa. 45, 176 A.2d 641 (1962); Jedwabny v. Philadelphia Transportation Co., 390 Pa. 231, 135 A.2d 252 (1957), cert. denied 355 U.S. 966, 78 S.Ct. 557, 2 L.Ed.2d 541 (1958); Peek v. United States, 321 F.2d 934 (9th Cir. 1963), cert. denied 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973 (1964).

In Russell, supra, the Supreme Court of Pennsylvania found as a fact that the appointment of one counsel " * * * for both defendants was highly prejudicial to appellant's rights. * * *" 176 A.2d at p. 643. In Jedwabny, supra, the same court found that the record presented a situation " * * * where the conflicts of interest are so critically adverse as not to admit of one attorney's [sic] representing both sides. * * *" 135 A.2d at p. 254.

In affirming the convictions of both defendants in the Peek case, supra, the Court of Appeals stated:

"Peek further alleges that he was denied his Sixth Amendment right to effective assistance of counsel for three reasons. The first is that a conflict of interest existed between Peek and Susanna Peek which prevented their joint trial counsel from giving to either his undivided loyalty. It is well recognized in the federal courts that the existence of a conflict of interest on the part of counsel representing two different defendants deprives the accused of the effective assistance of counsel; decisions dealing with the question of whether or not a conflict of interest existed have turned on the particular

---

6. First enacted by the Legislative Assembly of the Territory of Arizona as § 215, P.C. (1901).

7. First enacted by the said Legislative Assembly as § 1, Chapter 12, Laws of 1907.

fact situation of each case. In the instant case, Peek was charged with the robbery and conversion, and Susanna Peek with conversion. No factor in the nature of the offenses charged, or in the actual conduct of the trial indicate that counsel for appellants had to, or that he in fact did, slight the defense of one defendant for that of the other. The interests of appellants were not in conflict with each other. When called upon at oral argument to point out where this conflict existed, none could be shown this court." 321 F.2d 934, at p. 944.

In the case at bar, no *actual* conflict has been shown by appellate counsel and this court has been unable to find any conflict which resulted in prejudice to these defendants. To warrant a reversal, a showing of actual prejudice is required. Trotter v. State, 237 Ark. 820, 377 S.W.2d 14 (1964), cert. denied 379 U.S. 890, 85 S.Ct. 164, 13 L.Ed.2d 94 (1964).

Both defendants were charged with the same crimes which grew out of the same occurrences and the record is devoid of any indication that trial counsel was not equally loyal to each defendant. Both obviously knew of whatever conflict of interest there might have been and made no objection thereto. We do not approve the conduct of trial counsel in representing Mary Carpenter in the divorce action while being responsible for the joint defense of these two defendants. However, we have not found that such conduct was prejudicial to either defendant.

The judgments and sentences are affirmed.

HATHAWAY and MOLLOY, JJ., concurring.

NOTE: The Honorable Herbert F. Krucker having requested that he be relieved, the Honorable Jack G. Marks, Judge of the Superior Court of Pima County, was called to sit in his stead and participate in the determination of this decision.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 8043. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.