406 P.2d 229

**STATE of Arizona, Appellee,**

v.

**R. L. BETTS, Appellant.***

**No. I CA–CR 34.**

Court of Appeals of Arizona.

Oct. 5, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's number 1526. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Darrell F. Smith, Atty. Gen., by Gary K. Nelson, Asst. Atty. Gen., for appellee.

Moore & Moore, by R. C. Moore, Phoenix, for appellant.

STEVENS, Chief Judge.

R. L. Betts was found guilty of the offense of receiving stolen property, a felony. He was also found guilty of criminal contempt of court, the claimed contempt arising out of the first trial of the felony case. He was sentenced in relation to both of these matters and appeals from both.

On the 15th of June 1963, the warehouse of Babbitt's Wholesale Hardware was burglarized. Guns and telescopic sights were taken. The felony charge against Betts accuses him of having received some of these items "well knowing said property to have been stolen" and "receiving ·the same knowingly * * * for his own gain, and to prevent the owner * * * from· possession of said property".

Betts waived the preliminary hearing and appeared in the Superior Court on the date first scheduled for the arraignment with a Flagstaff attorney of his own choosing. On that date the arraignment was continued. When Betts next appeared for arraignment he advised the court that he had retained two Phoenix attorneys. There is no issue as to the proper arraignment. These at-

torneys appeared with him for the trial which commenced on the 20th day of February 1964. The trial continued throughout the day of the 20th, and on the morning of the 21st at 10:45, the State rested. A motion for directed verdict was made and denied. These matters are reflected in the minutes which then reflect the following entry, "Counsel for defendant wishes to confer with the Court in chambers * *". The minutes reflect that later in the day all parties and the jury were present in the court room. The minutes continue,

> "The Court inquires of the members of the jury if any of them have been contacted by William Armstrong, Jr., who is scheduled to be called as a character witness for the defendant. One male juror informs the Court that he spoke to Mr. Armstrong in the corridor that morning, and he assumes that the said Mr. Armstrong was aware of the fact that he was serving as a juror on this case. Thereupon, the jury is admonished and, BY ORDER OF THE COURT, recess is declared. * * * Comes now all parties as at previous session. The appearance of counsel, the defendant and the 12 jurors is noted. IT IS THE ORDER OF THIS COURT that this matter be declared a mistrial, as there is evidence of tampering with the jury; * * *".

Thereafter, both Phoenix attorneys secured orders authorizing their withdrawal as attorneys of record.

On 5 March 1964, captioned in the Criminal Case, an affidavit by a Deputy County Attorney was filed charging that Betts, on or about the 19th of February, "willfully attempted to improperly influence a member of the panel from which the jury was to be selected in the above entitled and captioned matter". Judge Wren, the resident Superior Court Judge for Coconino County, the Judge who presided at the aforesaid jury trial, issued an order to show cause directed to Betts and the file reflects that the sheriff served the "within summons and order to show cause in re contempt" upon Mr. Betts.

## THE FELONY

In relation to the felony charge, Judge Wren called a special venire for the trial of that case only and requested that Judge Raul H. Castro of Pima County preside. The minutes reflect the following matters: that when the case was called for trial the defendant was present in propria persona; that both sides announced ready and the roll of the jury was called; that "Defendant herewith waives the services of the jury and desires to submit the matter to the Court"; that the jury was excused; that the County Attorney made his opening statement; and that "Defendant at this time requests the trial proceed without counsel and makes his statement to the Court". The above matters are also reflected in the Reporter's Transcript and after the Judge excused the jury, he addressed the defendant and we find the following:

"Mr. Betts, I believe you told me you had a friend that wanted to sit with you, is that right?

"THE DEFENDANT: Yes, I do. He hasn't got here yet.

"THE COURT: Do you want to proceed without his services this morning?

"THE DEFENDANT: Yes, sir.

"THE COURT: Mr. Warden, with your opening statement, please, I think it might well be to apprise the Court of what the facts are in this case and what you intend to prove."

Thereupon County Attorney Warden made his opening statement. Upon the conclusion of the opening statement the Reporter's Transcript continues as follows:

"THE COURT: I want the record to show the defendant is appearing impropria (sic) persona this morning, that this is the trial. * * *

" * * * the trial was had with the defendant sometime in February, wasn't it?

"MR. WARDEN: February 23rd.

"THE COURT: February 23rd. That the Court declared a mistrial at that time.

"The defendant has been apprised of the trial setting; that he had counsel from Phoenix which has withdrawn. Furthermore, that he had negotiations with local counsel here in Flagstaff and up to yesterday, it was determined that counsel would not represent him, and the defendant requested that he may be allowed to proceed through his own representation.

"Now, Mr. Betts, at this time, the Court will allow you to make a statement to the Court advising the Court what you expect to prove in your case. You may do so. You may stand and advise the Court what you expect. * * *

"THE DEFENDANT: Your Honor, the only thing I want to show is that I didn't buy the guns knowing they were stolen. I bought the guns, but at the time, I did not know they were stolen.

"THE COURT: That will be your defense, is that right?

"THE DEFENDANT: Yes, sir.

"THE COURT: You may sit down.

"You may call your first witness, Mr. Warden."

The trial proceeded and the defendant stipulated to many facts. Oral statements which were attributed to the defendant while he was in custody were received with no effort to lay a preliminary foundation as to the fact that they were voluntary and no objection being made by the defendant. Thereafter a limited foundation was laid as to the defendant's written statement. The written statement was prepared after the oral statements. Later the defendant testified. Possibly his testimony supplied the missing foundational evidence. We make no affirmative ruling in relation to these statements by the defendant. Betts testified that he did not know how to secure the attendance of a particular witness whose testimony might have been of value in relation to the question of intent, intent being a rather vital part of the charge contained in the information. The entire proceedings commenced at 9:35 a. m. and both sides rested at 11:03 a. m. with two brief recesses. At 2:00 that afternoon, the court entered a formal finding that the defendant was guilty and fixed a later date for the formal judgment and sentence.

■ The appeal is largely bottomed upon the failure to make proper inquiry in relation to whether or not the defendant desired counsel and whether or not the defendant knew of his right to counsel in the event that he was without means to employ counsel. So far as the record discloses, the court was not informed as to Betts' means or lack of means at the time of the trial of the felony case to the court without a jury. In later hearings in relation to the furnishing of the record on appeal, it was brought out that Betts had paid some money to a Flagstaff attorney and that thereafter he paid a substantial fee to his Phoenix attorneys. All but a small portion of the money which was paid was borrowed money and as of the date of the felony trial before Judge Castro, the defendant was without funds. The first sentence of Rule 163 of the Rules of Criminal Procedure is as follows:

> "Before the defendant is arraigned on a charge of felony, if he is without counsel, the court shall ask him if he desires the aid of counsel and if he answers in the affirmative, and declares, under oath, that he has no means to employ counsel, the court shall assign counsel to represent him in the action." 17 A.R.S.

The State urges that where a defendant had counsel of his own selection at the time of his arraignment, the requirements of the rule have been satisfied. A person standing trial for a felony has a right to counsel. A person so standing trial has the right to waive counsel and to defend himself. This must be done with knowledge of his rights. We do not intend to negative the possibility that there may be situations wherein the court is permitted to designate counsel to assist a defendant even though the defendant requests or demands

that it is his right to be his own exclusive counsel.

Where, as here, the defendant had counsel through a portion of the critical period of the proceedings, we believe that the court should have assumed that he was aware of the value of counsel. When he appeared at the trial without counsel and requested leave to have the aid and comfort of a non-lawyer friend, we believe the court could assume that defendant knew the value of consultation. It later developed that this friend was the one who had loaned the money with which Betts had employed counsel. We hold that where a defendant in a felony case has appeared with counsel of his own choosing and at some stage later in the proceedings appears without counsel, there is a duty of inquiry and a duty of advice under the spirit of Criminal Rule 163 before proceeding with the trial. We recognize that after proper inquiry, the court may find that a defendant is in fact not indigent. State v. Edwards, 1 Ariz.App. 42, 399 P.2d 176 (1965). The inquiry must be made. Upon a reading of the Reporter's Transcript it occurs to this Court that there are many questions which could have been raised by counsel or which counsel could have intelligently waived and we make no further comment nor do we imply any possible rulings.

It was error to proceed to trial without full inquiry into Betts' desire for counsel and without full advice as to his rights to counsel. The conviction in the felony case is reversed and remanded for a new trial.

THE CONTEMPT

The hearing in relation to the contempt citation was conducted by Judge Wren who presided at the felony trial out of which the contempt proceedings arose. It is urged:

1) That even in the absence of the filing of an affidavit of bias and prejudice, the Judge should have disqualified himself.

2) That an attorney should have been appointed for Betts in connection with the contempt proceedings.

3) That hearsay evidence should not have been received and,

4) That the error in the receipt of the hearsay evidence is compounded by the fact that it was privileged.

The principles set forth in Van Dyke v. Superior Court, 24 Ariz. 508, 211 P. 576 (1922), apply in this proceeding. The Reporter's Transcript of a post conviction hearing reflects statements by Judge Wren which indicated that after careful study he concluded "that a criminal contempt action, not only should, but possibly must be tried before the Court upon which the contempt was contemplated * * *". We hold that while he could have stepped aside, he could not have been disqualified. It was not error for him to conduct the hearing even though he had prior information as to the issues to be tried. This information arose out of the "in chambers conference" of 21 February and as a result of an investigation which he ordered to be conducted. In the recent case of State v. Carpenter, 1 Ariz.App. 522, 405 P.2d 460 (decided 10 September 1965) this Court considered self disqualification and stated that "the determination of self-bias was discretionary with the trial judge".

It will be remembered that the minutes reflect that it was near the hour of noon of the second day of the trial and after the denial of the motion for directed verdict, that Betts' attorneys expressed their "wishes to confer with the Court in chambers". The contempt proceeding was formally set in motion by the affidavit and order to show cause above referred to. Let us first examine certain sections of the Arizona Revised Statutes:

"§ 21–232. Misconduct involving jurors; penalty

"A. A person is guilty of a crime who corruptly attempts to influence a juror, or a person summoned or drawn as a juror, in respect to his verdict in, or decision of any action

or proceeding, pending or about to be brought before him, by means of:

"1. Any communication, oral or written, had with him, except in the regular course of the proceedings.

\* \* \* \* \* \*

"B. A person who violates any provision of this section shall be punished by a fine not exceeding five thousand dollars, or by imprisonment in the state prison not to exceed five years. \* \* \*"

The offense charged in this section is a felony.

"§ 12–861. Criminal contempt defined

"A person who wilfully disobeys a lawful writ, process, order or judgment of a superior court by doing an act or thing therein or thereby forbidden, if the act or thing done also constitutes a criminal offense, shall be proceeded against for contempt as provided in §§ 12–862 and 12–863."

"§ 12–862. Order to show cause; service; return; attachment of person or sequestration of property

"A. When it appears to the superior court by the return of a proper officer on lawful process, or upon affidavit of some credible person, or by information filed by the county attorney, that there is reasonable ground to believe that a person is guilty of the disobedience described in § 12–861, the court may order the person so charged to show cause at the time and place the court directs why he should not be punished for such disobedience.

"B. The order, with a copy of the affidavit or information, shall be served upon the person charged within sufficient time to enable him to prepare and make return to the order, and if by the return the alleged contempt is not purged, a trial shall be directed at a time fixed by the court. \* \* \*"

"§ 12–863. Trial; sentence; fine; appeal

"A. The trial as provided in § 12–862 may be by the court, or upon demand of the person allegedly in contempt shall be by a jury as upon trial for misdemeanor.

"B. If the person allegedly in contempt is found guilty, judgment shall be entered and sentence pronounced punishing him by a fine not exceeding one thousand dollars, imprisonment for not exceeding six months, or both, in the discretion of the court.

"C. The fine shall be paid to the county treasurer, or to the party injured by the act constituting the contempt, or may be apportioned where more than one party is damaged.

"D. An appeal may be taken as in criminal cases and the appeal shall stay execution of the sentence and the person found guilty of contempt, if sentenced to imprisonment, shall be admitted to bail."

The contempt hearing was conducted after the conclusion of the court trial of the felony case and after the announcement of the finding of guilt in relation to the felony charge. The hearing was conducted prior to the time that sentence had been pronounced in the felony case. The Reporter's Transcript adequately reflects the proceedings and is not in conflict with the minutes. The trial Judge advised Betts that that particular day was the time for the hearing of the Criminal Contempt. The Reporter's Transcript reflects a question by the court and further preliminary steps as follows:

"THE COURT: \* \* \* Are you represented in this matter by an attorney?

"MR. BETTS: No, sir.

"THE COURT: What is your desire in this matter? Did you wish to contest the charge or did you wish to enter a plea?

·At this time, I will allow you to enter a plea of guilty or not guilty to this charge.

"MR. BETTS: I enter a plea of not guilty, your Honor.

"THE COURT: Are you prepared to defend yourself with any evidence at this time?

"MR. BETTS: No, sir.

"THE COURT: You are not prepared to go to trial on the matter, then?

"MR. BETTS: Yes, sir.

"THE COURT: Well, I mean at this time?

"MR. BETTS: Yes, sir.

"THE COURT: I would like to explain the law to you in this regard. It is somewhat complicated. You are entitled, as you probably know, to have an attorney to represent you on this Order to Show Cause why you should not be held in contempt of Court for jury tampering.

"You are also entitled to have this matter tried by jury rather than to the Court.

"In the event you demand a jury trial, the matter will have to be continued pending the summoning of a jury. You understand this?

"MR. BETTS: Yes, sir.

"THE COURT: The law also requires that you file a return to the County Attorney's office, through the charge of the County Attorney's office, as to jury tampering.

"But, inasmuch as you are not represented by an attorney, I will not require that that return be specified at this time other than for the record to note that you have entered a plea of not guilty.

"Is it your desire that this matter be tried to a jury or to the Court?

"MR. BETTS: Just trial by Judge, your Honor.

"THE COURT: You do not wish to have a jury trial?

"MR. BETTS: No, sir.

"THE COURT: Let the record note the Defendant waives a jury trial on it.

"As to Mr. Smith, I believe you represent the County Attorney's office, do you not?

"MR. SMITH: Yes, your Honor.

"I talked, also to Mr. Betts and I understand that he is ready to proceed at this time, also."

Mr. Betts faced a possible penalty of $1,000 fine or six months in jail or both, under Section 12–863 (B). Mr. Betts faced the possibility that the evidence might be sufficient to warrant the filing of a felony information under § 21–232. Mr. Betts faced a Criminal Contempt and not a Civil Contempt. The hearing related to "a serious offense" within the meaning of State v. Anderson, 96 Ariz. 123, 392 P.2d 784 (1964). While it is true that formerly there was doubt as to the authority of a Superior Court Judge to appoint an attorney to represent a defendant in a non-felony matter pending in the Superior Court, this doubt arising from the fact that the language outlined in Criminal Rule 163 specifies only felonies, Anderson has removed that doubt. Anderson was decided after the contempt hearing and after the felony trial which we are now considering.

We have examined the record to see whether or not an attorney could reasonably have been of service to Betts in the contempt hearing. In our opinion, he could have. This does not create Betts' entitlement to counsel, it emphasizes the need for counsel.

The record is silent as to an inquiry under Criminal Rule 163. The record should have clearly reflected that proper inquiry was made as to Betts' desire for an attorney and his capacity to employ one.

We hold that it was reversible error to not make inquiry as to Betts' ability to employ counsel and in relation to Betts' desire for counsel before proceeding with the contempt hearing.

We next examine the proceedings to determine whether the contempt matter should be reversed and remanded for a new hearing or reversed and dismissed. The entire proceeding was conceived as, and

conducted as, a criminal contempt proceeding: The language of the affidavit is in the language of § 21–232 but does not give Betts any details as to the alleged facts. In fact it is so broad that it might be difficult to claim double jeopardy if again filed because it could apply to each of the many persons who were members of the panel in attendance, upon the Superior Court and Coconino County. It is our opinion that upon proper request, Betts would have been entitled to further particulars before being required to stand trial.

The Mr. Armstrong who was referred to by the court in his questions to the jury on the 21st day of February (as appears from the above quoted portion of the minutes) is the same Mr. Armstrong who was a member of the overall jury panel, and who had not been called for the Betts' trial. In his testimony at the Contempt hearing now in question, he stated that Betts had asked him (Armstrong) if he knew other members of the panel, to which he replied . that he did not. Reporter's Transcript reflects the following additional testimony by Mr. Armstrong:

> "And at that time, he asked me if I would contact them and see if they were for his case or against his case.
>
> "Q. What did you say?
>
> "A. I said I would.
>
> "Q. Is that about the extent of your conversation?
>
> "A. Yes, sir.
>
> "Q.. Did you contact any of the members?.
>
> "A. No, sir, I did not.
>
> "Q. Did you have any other conversations with Mr. Betts?
>
> "A. No, sir.
>
> "He called about—to appear for—a character witness for him."

■■ There was hearsay evidence received at the hearing, the witness being a court employee who had investigated the charge, this evidence being to the effect that no juror had been contacted. Under the language of the affidavit, and under the evidence presented at the contempt hearing, "the member of the panel from which the jury was to be selected" and who it was charged Betts "willfully attempted to improperly influence" could have been no person other than Mr. Armstrong. The State did not prove a case of Criminal Contempt. We need not discuss hearsay testimony of the County Attorney in which he related the February 21st "in chambers" statements which Betts' attorneys then made to the Court. It is our opinion that this hearsay testimony should have been excluded in so critical a hearing. We do not pass upon the question of the presence or absence of privilege in relation to the statements of the attorneys. Even if the attorneys had testified in person in the language attributed to them by the hearsay testimony of the County Attorney, such testimony would not have been sufficient to bridge the gap of the proof necessary for a judgment of Criminal Contempt.

■ We commend Judge Wren for the granting of the mistrial. It takes far less evidence, (in fact no "evidence" but only that which appears to be reasonably credible information) to warrant the exercise of that judicial discretion necessary for the granting of a mistrial than it does to support a finding of guilt of criminal contempt in relation to the same mistrial. We agree that the matter should have been investigated as it was investigated. We agree that it was in the public interest that a formal hearing was held. We do not in any way approve of Betts' efforts to have Armstrong "contact them (the jurors) and see if they were for his case or against his case". Possibly a civil contempt was appropriate. We find insufficient evidence to establish the violation of the criminal provisions of § 21–232.

The Criminal Contempt proceedings are reversed with directions to dismiss the same.

CAMERON and DONOFRIO, JJ., concurring.