**John Pius MOSS, Appellant,**

**v.**

**The STATE of Wyoming, Appellee.**

**No. 3991.**

Supreme Court of Wyoming.

Jan. 26, 1972.

**1330** ■　　■

D. P. Svilar, of Boyer & Svilar, Lander, for appellant.

Clarence A. Brimmer, Atty. Gen., Frederic C. Reed, Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER and McEWAN, JJ.

McINTYRE, Chief Justice.

The defendant, John Pius Moss, is appealing from convictions in Fremont County of second degree murder; and assault and battery with intent to commit rape.

By way of the case's history, we should explain that Moss was first charged with killing Mrs. Eva Clara Holmes in an attempt to perpetrate rape. The defendant moved to dismiss the information on the grounds that he was an enrolled member of the Northern Arapahoe Indian tribe; that the offense charged was first degree murder and the alleged act was committed in Indian country, thereby providing exclusive jurisdiction in the United States District Court. The state district court granted defendant's motion and dismissed the information.

Thereafter, the county attorney of Fremont County filed a bill of exceptions in this court to the ruling of the district judge. As indicated in our opinion in State v. Moss, Wyo., 471 P.2d 333, we sustained the exceptions and held the trial court's finding that the offense was committed in Indian country erroneous.

. Although counsel for the defendant argues the state district court did not have jurisdiction to try defendant after our court had sustained the bill of exceptions, he concedes Moss was never in jeopardy when charges were at first dismissed by the district court. A jury had not been impaneled or sworn to try the case when the motion to dismiss the information was granted.

On appeal, the defendant makes 20 assignments of error. On oral argument, however, his attorney chose to argue only those assignments designated as points 2, 3, 7, 9 and 13. We cannot assume there was any intent to waive the other assignments. However, it does appear counsel for defendant considers the assignments argued most important. We likewise consider them the assignments most deserving of special treatment by us.

*Point 2*

■　After we sustained the exceptions previously brought to us by the county attorney, two indictments were returned against defendant by a grand jury. One indictment charged Moss with the murder of Mrs. Holmes; the other charged him with assault and battery on Eva Marie Holmes (the decedent's minor daughter) with intent to commit a felony, i. e., murder and rape. The assignment of error made on behalf of defendant under point 2 is that the trial court erred when it did not dismiss the indictments against Moss.

Sections 7–288 to 7–291, W.S.1957, have to do with the right of a prosecuting attorney to take bills of exception to the supreme court in criminal cases. Appellant seeks to find comfort in § 7–291 because it states the judgment of the court in the case

in which the bill was taken "shall not be reversed nor in any manner affected."

Even if we assume the order of the district court which dismissed the state's original information was a judgment, it is still apparent from our opinion in State v. Moss, Wyo., 471 P.2d 333, that nothing was reversed. The exceptions were sustained because the trial court had erroneously found the offense to have been committed in Indian country. Appellant shows us no reason or authority for barring the proceedings by grand jury indictment, where it is made clear and conceded by defendant that he was never in jeopardy when the state's information was dismissed.[1]

### Point 3

■ Appellant claims prejudicial error because the trial court denied a change of venue to another county. A change was sought by defendant prior to trial on the grounds that bias and prejudice existed against Indians and the appellant in Fremont County; and that there had been a vast amount of publicity about the case which was unfavorable to the defendant.

A separate hearing was held on defendant's motion for a change of venue. After the hearing, the court reserved ruling on the motion until after the voir dire examination of the jurors. It then denied the motion.

It is pointed out in 1 Devitt & Blackmar Fed. Jury Inst., 2d Ed., § 5.03, pp. 98–99, that normally a motion for a change of venue on account of claimed prejudicial publicity cannot be passed upon logically until the extent of the prejudice, if any, is determined upon the voir dire examination.

Unfortunately, the voir dire examination of jurors in this case is not a part of the record on appeal. We therefore have no way of knowing whether the existence of prejudice was or was not reflected in the voir dire examination. We can only assume the trial judge made a correct appraisal of the situation and that he did not abuse his discretion in denying the motion for a change of venue after the voir dire examination of the jury had been completed.

In State v. Hambrick, 65 Wyo. 1, 196 P.2d 661, 666, it was held not sufficient merely to show prejudice against the accused. The court said it must appear the prejudice was so great or general as to prevent him from receiving a fair and impartial trial. The court also said, whether a change of venue should be granted is ordinarily within the sound discretion of the trial court.[2]

This court stated in State v. Vines, 49 Wyo. 212, 54 P.2d 826, 829, when affidavits of opinions or conclusions are alone relied on, they furnish no basis for granting a change of venue. It was pointed out that interest and indignation of the people are the natural result of shocking crimes and do not of themselves require a change of venue.

Defendant has failed to show an abuse of discretion when the trial court denied his motion for change of venue.

### Point 7

■ The assignment made by appellant under point 7 is that the trial court erred by not permitting the testimony of a psychiatrist concerning the administration to defendant of tests of truth by use of

---

1. It was stated in Krutka v. Spinuzzi, 153 Colo. 115, 384 P.2d 928, 931, that a defendant was placed in jeopardy upon the impaneling and swearing of the jury. It was held in Kenreck v. State, 198 Kan. 21, 422 P.2d 894, 898, that the dismissal of a criminal charge prior to arraignment and trial was not a bar to a subsequent prosecution. According to State v. Buck, 239 Or. 577, 398 P.2d 176, 177, a defendant is not placed in jeopardy when the proceedings have only extended to the commencement of the voir dire examination of the first juror. In State v. Carpenter, 1 Ariz.App. 522, 405 P.2d 460, 465, it was said double jeopardy does not attach until evidence has been taken.

2. See also Dennis v. United States, 171 F.2d 986, aff'd 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734; and Wheeler v. United States, 10 Cir., 382 F.2d 998.

sodium pentothal, sodium amytal or a "truth serum."

The only authority cited in support of this assignment is People v. Jones, 42 Cal.2d 219, 266 P.2d 38, 43. There is nothing in that case, however, which is helpful to appellant. It merely held testimony of a psychiatrist could be offered to show the psychiatrist's opinion that the accused was not a sexual deviate and was not capable of having the necessary intent to be lustive with a child. The court expressly held statements made by the accused while subject to truth drugs are inadmissible to prove the truth of the matter asserted.

We find nothing in the record before us or in the proceedings on appeal to indicate the defendant made an offer of proof or in any other way justified use of the testimony of a psychiatrist pertaining to tests made upon the accused with a truth serum. In the absence of a showing to the contrary, we can only assume the purpose would have been to present to the jury statements supposedly made by the accused while subject to truth drugs. Such statements would have been self-serving and inadmissible.[3]

### Point 9

Appellant's point 9 on appeal is that the trial court erred when it admitted a tape recording which contained statements of the defendant. The statements were made during the course of an interrogation by the county and prosecuting attorney the morning following the murder of Mrs. Holmes.

It is the contention of appellant that the statements were obtained in violation of the constitutional rights of the accused; the defendant was not adequately warned of his rights; that he did not have an attorney present during the interrogation; also that he did not understand the questions which were asked him and did not knowingly, intelligently and voluntarily waive his rights.

██ Courts have not ruled out the right and duty of law officers to investigate crimes such as murder and rape. In Dickey v. State, Wyo., 444 P.2d 373, 381, we took cognizance of the general standards imposed by decisions of the United States Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 1765, 12 L.Ed.2d 977; and in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. As stated in *Dickey,* we realize there can be no "custodial interrogation" of the accused until he has been warned of his constitutional rights.

The interrogation of Moss was admittedly a custodial interrogation and we therefore look to see whether the warnings given him, prior to the statements made by him, meet the standards prescribed in *Escobedo* and *Miranda.* As set out in the *Miranda* opinion, at 384 U.S. 479, 86 S.Ct. 1630, 16 L.Ed.2d 694, an accused must be warned as follows:

1. That he has the right to remain silent, that anything he says can be used against him in a court of law.

2. That he has the right to the presence of an attorney, and if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires.

Before any statements were made by Moss in the interrogation we are now concerned with, the county attorney warned him as follows:

"Before I start talking to you, I'd like to give you a few admonitions: No. 1, you don't have to talk to me if you don't want to, and if you do, anything that you do tell me, I could possibly use against you if criminal charges were filed against you; that you're entitled to an attorney, and if you can't procure an attorney, the state will provide one for you, and you're entitled to have that attorney with you right now—when you give the statement,

---

3. The inadmissibility of statements made by the accused while subject to truth drugs is made clear in State v. Linn, 93 Ida. 430, 462 P.2d 729, 732; and in Lindsey v. United States, 9 Cir., 237 F.2d 893, 897 (1956).

if you want to. Do you understand all those things?"

In response to the question of whether he understood all those things, Moss answered, "Yes."

As we examine the warnings given by the county attorney to Moss against the standards set forth in the *Miranda* opinion, we are left with no doubt about the completeness of the warnings. Counsel for appellant does not actually claim the interrogator failed to warn in any necessary area. Instead, he says Moss did not understand the questions which were asked him in a tricky manner, and did not knowingly, intelligently and voluntarily waive his rights.

■ Moss, at the time of his statement, was 20 years old and a high school graduate. The trial judge who heard the matter of whether Moss' statement should be admitted into evidence had the advantage of seeing and hearing the defendant testify. He was in a better position than we would be to pass on the questions of whether the defendant understood what he was being asked, whether he understood what he was saying when he said "I know that I have killed a woman," and whether he knowingly and voluntarily waived his rights. We will not try to second-guess the trial judge on these matters or substitute our judgment for his.[4]

Moreover, during the course of the statement being made by Moss, he admitted several times that he had strangled Mrs. Holmes. The questions which evoked his responses about what took place are relatively unimportant. What is important are the statements he made.

■ It is suggested that even after Moss indicated he would like an attorney, the interrogation was not immediately discontinued. The suggestion appears to be made, however, by taking statements out of context. Near the end of the interrogation the county attorney asked questions and Moss answered as follows:

"Q: All right. We're going to get you up to the court here, the first thing this morning, so that he can talk to you. Do you have a lawyer? A: No, I don't.

"Q: You want us to get you a lawyer? A: If you would, please."

It is apparent to us that the county attorney was explaining what the procedure would be—that the officers were going to get Moss up to the court. When Moss was asked if he had a lawyer and then if he wanted the officers to get him a lawyer, the county attorney obviously meant for proceedings before the court. He knew Moss did not have an attorney at the interrogation. We also think it is clear from the record that Moss' reply about getting a lawyer for him had reference to a lawyer for court and further proceedings.

Be that as it may, however, Moss made no admissions or statements which could possibly be construed as damaging or incriminating after he indicated a desire for an attorney. Reversible error cannot therefore be claimed in connection with anything said or done following the offer and acceptance of a lawyer—for such proceedings as were to follow.[5]

### Point 13

It is claimed on behalf of appellant, under point 13, that the court erred by failing, at

---

4. It is of interest to note the Slip Opinion for Lego v. Twomey, 404 U.S. ——, 92 S.Ct. 619, 30 L.Ed.2d 618, which was decided by the United States Supreme Court January 12, 1972. The court, in that opinion, reaffirmed that it is the duty of the trial judge to determine the admissibility of a confession. It also held the petitioner for habeas corpus had not demonstrated that admissibility rulings based on the preponderance-of-evidence standard were unreliable or that imposition of any higher standard under expanded exclusionary rules would be sufficiently productive to outweigh the public interest in having probative evidence available to juries.

5. See Soolook v. State, Alaska, 447 P.2d 55, 64, cert. den. 396 U.S. 850, 90 S.Ct. 107, 24 L.Ed.2d 99; and Guyette v. State, 84 Nev. 160, 438 P.2d 244, 249.

defendant's request, to instruct on the lesser included offenses contained in the charge of assault and battery with intent to commit a felony. In another assignment, appellant claims the verdicts of the jury are contrary to the evidence and not supported by sufficient evidence.

At least twice in the state's brief, statements are made to the effect that it is the state's contention Moss went into the house after murdering Mrs. Holmes and assaulted Mrs. Holmes' daughter with "either the intent to rape her or to murder her" since the daughter was the only person to know Moss had been there.

Thus, the state seeks to stand on an alternative which is not available to it in connection with the appeal. In other words, the state would leave it to us to speculate on whether Moss' intention was to murder or rape. No evidence is pointed to or suggested which would show what Moss might have intended in connection with his assault on the daughter.

■ There is no suggestion of any evidence of an overt act showing an attempt to rape. Hence, there would be no basis for assuming an intent to rape. Indeed, it would be just as reasonable, if not more so, to assume the intent was to kill.

However, the door is closed on the charge of assault and battery with intent to murder because the jury found Moss not guilty on that charge.

Inasmuch as concurrent sentences were given in connection with the verdicts of guilty of murder in the second degree and guilty of assault and battery with intent to commit rape, the defendant will still be serving the longer sentence.

We have very carefully reviewed the record and considered all assignments of error set out in appellant's brief, including those not discussed in detail by us. Except as indicated with respect to the charge of assault and battery with intent to rape, we find no merit in any of the assignments. We also deem it unnecessary to address ourselves in detail to any of the assignments not discussed in this opinion.

The district court is instructed to set aside the verdict and sentence pertaining to assault and battery with intent to commit rape.

Judgment and sentence pertaining to second degree murder affirmed.