CONVENTION CENTER REFEREN-
DUM COMMITTEE et al.,
Appellants,

v.

BOARD OF ELECTIONS AND ETHICS
et al., Appellees.

No. 79–140.

District of Columbia Court of Appeals.

Argued Feb. 16, 1979.

Decided Feb. 28, 1979.

William B. Schultz, Washington, D.C., for appellants.

Cecily E. Collier, Washington, D.C., for appellee Bd. of Elections and Ethics.

James C. McKay, Jr., Asst. Corp. Counsel, Washington, D.C., with whom Louis P. Robbins, Acting Corp. Counsel, and Richard A. Barton, Deputy Corp. Counsel, Washington, D.C., were on the pleadings, for appellee District of Columbia.

Before GALLAGHER, HARRIS and FERREN, Associate Judges.

GALLAGHER, Associate Judge:

Appellants sought a preliminary injunction to order the Board of Elections and Ethics (the Board) to receive initiative petitions which they had circulated concerning construction of a convention center. The trial court denied the injunction, and while appeal was pending we provisionally ordered the Board to receive the petitions in order to permit appellants to comply with

the Charter Amendments' requirement that petitions be received by the Board ninety days before the election in which the initiative is sought to be presented. We here affirm the denial of the preliminary injunction and on this record conclude that the Charter Amendments are not self-executing.[1]

The "Initiative, Referendum, and Recall Charter Amendments Act of 1977," D.C. Law 2–46, 24 D.C.Reg. 199 (the Charter Amendments), became effective March 10, 1978.[2] Section 7 of the Act, *as amended* by Pub.L. 95–526, § 1(3); 92 Stat. 2023 (1978), provides:

> The Council of the District of Columbia shall adopt such acts as are necessary to carry out the purpose of this Amendment within one hundred and eighty (180) days of the effective date of this Amendment. Neither a petition initiating an initiative nor a referendum may be presented to the District of Columbia Board of Elections and Ethics prior to October 1, 1978.

On September 6, 1978, the 180-day period expired without the passage of any such enabling legislation.

In October 1978, appellants, John J. Phelan and the Convention Center Referendum Committee (CCRC), informed the Board of their intention to circulate an initiative proposal that would prevent the Mayor and the City Council from expending any funds for the construction of a convention center. Because the City Council failed to enact enabling legislation, appellants sought the Board's guidance on the form and mode of circulation of the petitions, and requested the Board to promulgate rules to implement the Charter Amendments.

The Board treated the CCRC's request for guidance as a Request for an Advisory Opinion,[3] published it in the D.C. Register

and invited public comment thereon. On December 15, 1978, the Board adopted its General Counsel's legal opinion that it had no authority to accept initiative petitions in light of the failure of the City Council to enact enabling legislation.

Appellants invoked the Superior Court's jurisdiction under .D.C.Code 1978 Supp., § 1–1156(c), to review the Board's advisory opinion. In addition to their request for a preliminary injunction, they sought an order declaring the Charter Amendments to be self-executing and directing the Board to take all steps necessary to place the initiative on the May 1979 ballot. Upon the denial of their request for a preliminary injunction, they appealed to this court, requesting us to reach the merits of the substantive question presented.

Appellants have offered authority for the proposition that constitutional amendments (to which the Charter Amendments are functionally equivalent) are presumptively self-executing. They argue that the detailed nature of the Amendments supports that proposition, and contend that the legislative history indicates the Act's framers were chiefly concerned that the initiative process be available to the electorate by October 1, 1978. To conclude that the Amendments are not self-executing, say appellants, invites the City Council to nullify by inaction the important political rights there conferred.

The Board agrees that, in general, constitutional provisions are presumed to be self-executing, but contends that this has been rebutted by the inclusion in the Charter Amendments of the 180-day requirement for passing further legislation, and by the repeated statements of City Council members, reported in the legislative history, that they intended to pass implementing legisla-

---

1. If in the future compelling indications to the contrary should appear, *i. e.*, extended inaction by the Council in the matter of enacting enabling legislation in furtherance of the pertinent Charter Amendments, in an appropriate case the court would be required to re-examine the conclusion here reached. Such inaction would suggest the possibility that the trial court should order equitable relief, directed at the

Board, to assure that the purposes of the Charter Amendments are carried out.

2. These Charter Amendments appear in the appendix to this opinion.

3. D.C.Code 1978 Supp., § 1–1156(c), *as amended* by the Full Political Participation Act of 1978, D.C. Law 2–101, 25 D.C.Reg. 257.

tion. Moreover, the Board stresses the potential for fraud, abuse, and confusion caused by the absence of enabling legislation as strong arguments for awaiting the City Council's passage of the "Initiative, Referendum, and Recall Procedures Act of 1979," D.C. Bill 3–2 rather than ordering an initiative election in May 1979.[4]

■ The trial court did not abuse its discretion by denying the preliminary injunction as, among other things, appellants failed to demonstrate a substantial likelihood that they would succeed on the merits (*Wieck v. Sterenbuch*, D.C.App., 350 A.2d 384, 387 (1976)).[5] We will not limit our review to the denial of the injunction, however, because of the unusually strong public interest in the expeditious resolution of this controversy. Since this issue has been fully briefed by the parties, we conclude that no genuine purpose would be served in this exceptional case by awaiting the trial court's judgment on the merits of the complaint there pending. Accordingly, we now turn to the fundamental question of whether the Charter Amendments should be deemed self-executing.

In determining whether constitutional (charter) provisions are self-executing, courts have usually looked to "whether the constitutional intent is to provide a presently effective rule, by means of which the right given may be enjoyed and protected and the duties imposed may be enforced without supplementary legislation." *Student Government Association v. Board of Supervisors*, 262 La. 849, 264 So.2d 916, 919 (1972). *See also Wolverine Golf Club v. Hare*, 24 Mich.App. 711, 180 N.W.2d 820, 826 (1970),, *aff'd*, 384 Mich. 461, 185 N.W.2d 392 (1971); *Rockefeller v. Hogue*, 244 Ark. 1029, 429 S.W.2d 85, 88 (1968); *State v. Mills*, 91 Ariz. 206, 370 P.2d 946, 947 (1962). Most courts have sought to construe such provisions in accordance with the intent of

their framers, *Wolverine v. Hare, supra; Maddox v. Hunt*, 183 Okl. 465, 83 P.2d 553, 556 (1938).

■ The text of an enactment is the primary source for determining its drafters' intent. Some courts have found it useful to inquire whether the language of the provision is addressed to the legislature or to the judiciary, *Rockefeller v. Hogue, supra; State v. Hall*, 35 N.D. 34, 159 N.W. 281, 284 (1916). If directed to the legislature, the provision is not self-executing, as its primary function is to require the legislature to make further law. Because Section 7 of the Charter Amendments speaks in mandatory terms to the City Council concerning enabling legislation, this analysis supports an inference that the Charter Amendments were not intended to be self-executing.

■ Courts have also examined the amount of detail contained in a constitutional provision for an indication of whether the provision was meant to be operative in the absence of further legislation, *Wolverine Golf Club v. Hare, supra; State v. Hall, supra*. As expressed in Cooley on Constitutional Limitations 121 (7th ed.):

A constitutional provision may be said to be self-executing if it supplies a sufficient rule, by means of which the right given may be *enjoyed and protected*, or the duty imposed may be enforced, and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law. [Emphasis added.]

While the Charter Amendments[6] contain some detail, we believe they do not provide sufficient safeguards to insure the integrity of an initiative election.

Our conclusion that the text of the Charter Amendments manifests the drafters' in-

---

4. We do not find it necessary to consider here the District of Columbia's contention that the subject matter of the proposed initiative is improper.

5. Appellees are incorrect in arguing that appellants' rights and interests can be protected as well as by an initiative scheduled after May

1979. If appellants presently have a right to an initiative on the ballot, they should not be told that they must wait until a later date, when circumstances inevitably will have changed.

6. See Appendix.

tent to pass further implementing legislation finds support in the legislative history. On March 16, 1977, the City Council's Committee on Government Operations issued its "Committee Report # 1," which recommended the adoption of D.C. Bill 2–2, the Charter Amendments. At page 3, the Report states that "The Board sought a general grant of rule-making authority to carry out the processes if approved by the voters." Since no general grant of rule-making authority is included in the amendments, it is evident that the Council intended to reserve to itself authority over the specific procedures. The Committee Report explains that the bill

> allows no initiatives or referenda to be presented until after October 1, 1978, in order to have *implementing* legislation adopted and funds appropriated for the District of Columbia Board of Elections and Ethics to manage the elections. [Report at 17; emphasis added.]

After the City Council passed the Amendments, Arrington Dixon, then Chairman of the Government Operations Committee, testified before the House Subcommittee on Fiscal and Government Affairs that "the Council[,] pursuant to the language of both amendments . . . must adopt appropriate implementing acts," before the October 1 effective date.[7]

As these excerpts from the legislative history demonstrate, the drafters chose the October 1 date on the assumption that the necessary preparations for administering an initiative election—the passage of implementing legislation and the allocation of monies to the Board—would be completed. That the legislators apparently miscalculated the task of designing implementing procedures, and so failed to pass legislation by September 6, 1978, is no present justification for this court to impose, or to order the Board to develop, initiative procedures.

Had the City Council ignored its legislative mandate under the Charter Amendments, our decision might be different. But that is not the case. Documents submitted by the government concerning the Council's efforts to adopt legislation reveal legislative activity beginning on March 30, 1978, twenty days after the Charter Amendments went into effect. When the Council failed to reach agreement on the final form of the procedures act by the end of the 1978 legislative session, the bill was reintroduced on January 2, 1979. Shortly thereafter, on January 31, 1979, the Government Operations Committee favorably reported the bill, D.C. Bill 3–2, out of committee.

In deciding that the Charter Amendments were not intended to be self-executing, we do not ignore appellants' concern that such a construction might enable the City Council to prevent future initiatives by failing to pass legislation. We base our holding primarily on (a) the indications inherent in Section 7 of the Act, (b) the legislative expressions at the time of the Amendments' enactment, and (c) the activity of the City Council since March of 1978 directed toward passing implementing legislation. From all that appears, this legislative activity is nearing its end and the enabling legislation is about to become law.[8]

Accordingly, we will not disturb the trial court's denial of the preliminary injunction.

*Affirmed.*

7. Statement of Arrington Dixon Before the Subcommittee on Fiscal and Government Affairs, Committee on the District of Columbia, U.S. House of Representatives, Jan. 31, 1978.

8. Our refusal to order the Board to present the initiative at the May 1979 special election is also motivated by our perception of the serious risks involved in a contrary course of action. The Board represents it is very dubious whether it could develop and implement suitable procedures within two months. Moreover, says the Board, no penalties exist for fraud or abuse of the initiative process, nor could it legislate them. It asserts the safeguards that modern voters have come to view as essential would be absent.

While we do not find these assertions dispositive of the issue, the omissions in initiative procedures constitute another reason to conclude that the public interest will be best served by awaiting the forthcoming action of the City Council.

APPENDIX

AN ACT

2–46

IN THE COUNCIL OF THE
DISTRICT OF COLUMBIA

June 14, 1977

To amend the Charter of the District of Columbia to provide for the power of initiative, referendum, and recall.

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this act may be cited as the "Initiative, Referendum, and Recall Charter Amendments Act of 1977".

Sec. 2. Subject to the approval of the registered qualified electors of the District of Columbia, the District of Columbia charter is amended as follows:

"Amendment No. 1—Initiative
and Referendum

"Sec. 1. Definitions

"(a) The term 'initiative' means the process by which the electors of the District of Columbia may propose laws (except laws appropriating funds) and present such proposed laws directly to the registered qualified electors of the District of Columbia for their approval or disapproval.

"(b) The term 'referendum' means the process by which the registered qualified electors of the District of Columbia may suspend acts of the Council of the District of Columbia (except emergency acts, acts levying taxes, or acts appropriating funds for the general operating budget) until such acts have been presented to the registered qualified electors of the District of Columbia for their approval or rejection.

"Sec. 2. Process

"(a) An initiative or referendum may be proposed by the presentation of a petition to the District of Columbia Board of Elections and Ethics containing the signatures of registered qualified electors equal in number to five (5) percent of the registered electors in the District of Columbia: PRO-VIDED, That the total signatures submitted include five (5) percent of the registered electors in five (5) or more of the City's Wards. The number of registered electors which is used for computing these requirements shall be according to the latest official count of registered electors by the Board of Elections and Ethics which was issued thirty (30) or more days prior to submission of the signatures for the particular initiative or referendum petition.

"(b)(1) Upon the presentation of a petition for a referendum to the District of Columbia Board of Elections and Ethics as provided in this section, the District of Columbia Board of Elections and Ethics shall notify the appropriate custodian of the act of the Council of the District of Columbia (either the President of the United States or the President of the Senate and the Speaker of the House of Representatives) as provided in sections 404 and 446 of the Home Rule Act and the President of the United States or the President of the Senate and the Speaker of the House of Representatives, shall, as is appropriate, return such act or portion of such act to the Chairman of the Council of the District of Columbia. No further action may be taken upon such act or portion of such act until after a referendum election is held.

"(2) No act is subject to referendum if it has become law according to the provisions of section 404 of the Home Rule Act.

"Sec. 3. The District of Columbia Board of Elections and Ethics shall submit an initiative measure without alteration at the next general, special or primary election held at least ninety (90) days after the measure is received. The District of Columbia Board of Elections and Ethics shall hold an election on a referendum measure within one hundred and fourteen (114) days of its receipt of a petition as provided in section 2 of this act. If a previously scheduled general, primary, or special election will occur between fifty-four (54) and one hundred and fourteen (114) days of its receipt of a petition as provided in section 2 of this act, the District of Columbia Board of Elections and Ethics may present the referendum at that election.

"Sec. 4. If a majority of the registered qualified electors voting on a referred act vote to disapprove the act, such action shall be deemed a rejection of the act or that portion of the act on the referendum ballot and no action may be taken by the Council of the District of Columbia with regard to the matter presented at referendum for the three hundred and sixty-five (365) days following the date of the District of Columbia Board of Elections and Ethics' certification of the vote concerning the referendum.

"Sec. 5. (a) If a majority of the registered qualified electors voting in a referendum approve an act or adopt legislation by initiative, then the adopted initiative or act approved by referendum shall be an act of the Council of the District of Columbia upon the proper certification of the vote by the District of Columbia Board of Elections and Ethics.

"(b) The Chairman of the Council of the District of Columbia shall transmit acts approved as provided in this amendment to the Speaker of the House of Representatives and the President of the Senate on the day the District of Columbia Board of Elections and Ethics certifies that a majority of the registered qualified electors voting on the measure voted in favor thereof.

"Sec. 6. No initiated act or act subject to referendum which has been ratified by a majority of the registered qualified electors voting on the initiative or referendum shall take effect until the end of the thirty (30) day period (excluding Saturdays, Sundays, and holidays and any day on which either House is not in session) beginning on the day such measure is transmitted by the Chairman of the Council of the District of Columbia to the Speaker of the House of Representatives and the President of the Senate, and then only if during such thirty (30) day period both Houses of Congress do not adopt a concurrent resolution disapproving such initiated act or act passed by referendum.

"Sec. 7. The District of Columbia Board of Elections and Ethics shall be empowered to propose a short title and summary of the initiative and referendum matter which ac-
curately reflects the intent and meaning of the proposed referendum or initiative. Any citizen may petition the Superior Court of the District of Columbia no later than thirty (30) days prior to the election at which the initiative or referendum will be held for a writ in the nature of mandamus to correct any inaccurate short title and summary by the District of Columbia Board of Elections and Ethics and to mandate that Board to properly state the summary of the initiative or referendum measure.

"Sec. 8. The Council of the District of Columbia shall adopt such acts as are necessary to carry out the purpose of this Amendment within one hundred and eighty (180) days of the effective date of this Amendment. Neither a petition initiating an initiative nor a referendum may be presented to the District of Columbia Board of Elections and Ethics prior to October 1, 1978.

## "CHARTER AMENDMENT NO. 2— RECALL OF ELECTED PUBLIC OFFICIALS

"Sec. 1. The term 'recall' means the process by which the qualified electors of the District of Columbia may call for the holding of an election to remove or retain an elected official of the District of Columbia (except the Delegate to Congress for the District of Columbia) prior to the expiration of his or her term.

"Sec. 2. Any elected officer of the District of Columbia government (except the Delegate to Congress for the District of Columbia) may be recalled by the registered electors of the election ward from which he or she was elected or by the registered electors of the District of Columbia at-large in the case of an at-large elected officer, whenever a petition demanding his or her recall, signed by ten (10) percent of the registered electors thereof, is filed with the District of Columbia Board of Elections and Ethics. The ten (10) percent shall be computed from the total number of the registered electors from the ward, according to the latest official count of registered electors by the Board of Elections and Eth-

**556**

ics which was issued thirty (30) or more days prior to submission of the signatures for the particular recall petition. In the case of an at-large elected official, the ten (10) percent shall include ten (10) percent of the registered electors in five (5) or more of the City's wards. The District of Columbia Board of Elections and Ethics shall hold an election within one hundred and fourteen (114) days of its receipt of a petition as provided in section 2 of this act. If a previously scheduled general, primary, or special election will occur between fifty-four (54) and one hundred and fourteen (114) days of its receipt of a petition as provided in section 2 of this act, then the District of Columbia Board of Elections and Ethics may present the recall question at that election.

"Sec. 3. The process of recalling an elected official may not be initiated within the first three hundred and sixty-five (365) days nor the last three hundred and sixty-five (365) days of his or her term of office. Nor may the process be initiated within one year after a recall election has been determined in his or her favor.

"Sec. 4. An elected official is removed from office if a majority of the qualified electors voting in the election vote to remove him or her. The vacancy created by such recall shall be filled in the same manner as other vacancies as provided in sections 401(d) and 421(c)(2) of the Home Rule Act and section 10(a) of the District of Columbia Elections Act.

"Sec. 5. The Council of the District of Columbia shall adopt such acts as are necessary to carry out the purpose of this amendment within one hundred and eighty (180) days of the effective date of this amendment. No petition for recall may be presented to the District of Columbia Board of Elections and Ethics prior to October 1, 1978."

Sec. 3. This shall take effect as provided in section 303 of the District of Columbia Self-Government and Governmental Reorganization Act.

As amended by Pub.L. 95–526, § 1(3), 92 Stat. 2023 (1978). See Sec. 5.

(3) Amendment No. 1 (relating to initiative and referendum) to title IV (the District Charter) is amended—

(A) by striking out sections 5 and 6 and inserting in lieu thereof the following:

"Sec. 5. If a majority of the registered qualified electors voting in a referendum approve an act or adopt legislation by initiative, then the adopted initiative or the act approved by referendum shall be an act of the Council upon the certification of the vote on such initiative or act by the District of Columbia Board of Elections and Ethics, and such act shall become law subject to the provisions of section 602(c)."; and

(B) by redesignating sections 7 and 8 as sections 6 and 7, respectively.