Doris M. DANIEL, Petitioner,

v.

DISTRICT OF COLUMBIA INSURANCE ADMINISTRATION, Respondent.

No. 93–AA–264.

District of Columbia Court of Appeals.

Argued Feb. 15, 1994.

Decided March 24, 1994.

---

William J. Skinner, Rockville, MD, for petitioner.

Lutz A. Prager, Asst. Deputy Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for respondent.

Before FARRELL and KING, Associate Judges, and KERN, Senior Judge.

KING, Associate Judge:

■ Doris M. Daniel ("petitioner") petitioned for review of an order of the District of Columbia Department of Consumer and Regulatory Affairs, Insurance Administration ("the agency"), denying in part her claim for benefits from the Uninsured Motorist Fund, D.C.Code § 35–2114 (1993) ("the Fund"). The principal issue is whether a sum, designated as being solely for pain and suffering, received by petitioner in settlement of a suit against the uninsured motorist who caused her injuries, is a "collateral source" that reduces the amount of the entitlement available to her from the Fund. We hold that the agency's determination that the settlement amount constituted a "collateral source" is supportable and, accordingly, we affirm.

## I.

The facts are not in dispute. On March 14, 1989, petitioner sustained serious, permanent injuries when the van in which she was a passenger was involved in an accident caused solely by the negligence of the driver of the van, who was uninsured. Petitioner received extensive medical treatment, as well as outpatient services, for her injuries. Because of those injuries, petitioner did not seek employment for a period of over one and a half years following the accident.

On January 9, 1991, petitioner filed suit in the Superior Court against the uninsured driver, who responded by filing a suggestion of bankruptcy. On February 12, 1991, petitioner filed an adversary proceeding in the United States Bankruptcy Court for the District of Columbia seeking a determination of whether her action was discharged. Following mediation, the parties entered into a settlement whereby the driver agreed to pay petitioner $5,000.00 in installments of $100.00 per month for fifty months. The parties stipulated that "because of the circumstances of the case it is agreed that such payments shall be designated solely as settlement payments for pain and suffering resulting from an automobile accident occurring on March 14, 1989." The bankruptcy court approved the settlement agreement, a judgment in favor of petitioner against the uninsured motorist was entered accordingly, and petitioner's action in the Superior Court was dismissed.

On July 8, 1991, petitioner filed a claim with the agency for benefits from the Fund for lost wages and medical rehabilitation expenses. An administrative law judge ("ALJ") issued a "Recommended Decision and Order," finding that petitioner had: (1) incurred $30,360.00 in lost wages; (2) settled her action against the driver for $5,000.00; (3) received $551.00 in Social Security Income ("SSI") benefits; and (4) received $2,592.66 in Medicaid benefits. The ALJ concluded that although petitioner had established entitlement to $24,000.00 in lost wages, the maximum amount permitted under the statute, that amount would be reduced by the sum of $3,143.66 due to SSI ($551.00) and Medicaid ($2,592.66) benefits received. The ALJ further concluded the $5,000.00 settlement would not be deducted:

since [petitioner's] settlement with [the driver] was solely for pain and suffering and the statute does not provide compensation for pain and suffering as a permitted category of compensation.... [However,] the [ALJ] concludes that the statutory subrogation rights given to the Fund pursuant to D.C.Code 35–2114(g)(2) may still be available to the Fund if it chooses to enforce this provision.

The ALJ awarded petitioner $20,856.34 ($24,000.00 minus $3,143.66 for SSI and Medicaid benefits). On December 21, 1992, the Superintendent of Insurance ("Superintendent"), modifying the recommended order, concluded that the $5,000.00 settlement should also offset the award. Allowing for the additional $5,000.00 deduction, the Superintendent authorized payment to petitioner of $15,856.34, plus $1,000.00 in attorney's fees.[1]

## II.

■ The Fund was established "for the purpose of awarding compensation to a victim of an accident who sustains injury therefrom *and would not otherwise be compensated for his or her loss.*" D.C.Code § 35–2114(a) (emphasis added). In furtherance of this objective, the law provides that while an award "shall be equal to the amount of the victim's loss," any payment of benefits shall be "decreased by all amounts received by or available to the victim from collateral sources." D.C.Code § 35–2114(e). Caps on the amount a claimant may recover for various losses are established: "No compensation shall be awarded pursuant to this section in an amount exceeding $100,000 in medical and rehabilitative expenses, $24,000 in wage loss, and $4,000 in funeral expenses."[2] D.C.Code § 35–2114(e). Noneconomic loss-

es, including pain and suffering damages, are not recoverable from the Fund. *See* D.C.Code § 35–2102(13), (19) (1993). We think these provisions taken together demonstrate that the Fund was intended to serve as a secondary source of compensation for victims of accidents involving an uninsured motorist.

Petitioner maintains the Superintendent erred in deducting the $5,000.00 settlement amount because: (1) that amount was intended to compensate only for pain and suffering and it should have been deducted, if at all, from any award for medical expenses rather than from the award for lost wages, and since no medical expenses were awarded there should be no deduction at all; and (2) it is not evident from the statute,[3] or the implementing regulations, that the settlement constitutes a "collateral source."

The Superintendent's ruling is based upon the statutory requirement that an award from the Fund must be "decreased by *all amounts* received by or available to the victim from collateral sources." D.C.Code § 35–2114(e) (emphasis added). This provision serves to reduce the sum available from the Fund when the claimant is entitled to receive compensation from other sources. As the Superintendent concluded, the Fund statute does not lend itself to petitioner's construction that the settlement amount (ostensibly medically related) can be deducted only from a medical expenses award. Nor is there any basis for disturbing the Superintendent's determination that the parties' designation of the settlement being solely for "pain and suffering" is of no moment. Under the plain meaning of the statute, *all* amounts received by a claimant from an outside source must be applied to reduce the

---

1. The Corporation Counsel has represented that the Superintendent subsequently determined that the award should not have been reduced by the sum of $2,592.66, which represents the amount attributable to Medicaid benefits. Thus, the final award is $18,449.00 ($24,000.00 (the statutory maximum) minus $551.00 (SSI benefits) and $5,000.00 (the settlement amount)).

2. In addition, a claimant may not receive more than $1,000 in attorney's fees. *See* D.C.Code § 35–2114(f).

3. We summarily reject petitioner's additional contention that D.C.Code § 35–2114 is unconstitutionally vague. *See LCP, Inc. v. District of Columbia Alcoholic Beverage Control Bd.,* 499 A.2d 897, 900–02 (D.C.1985) (statute governing issuance of liquor licenses was not unconstitutionally vague as applied to facts of case); *Nova Univ. v. Educational Inst. Licensure Comm'n,* 483 A.2d 1172, 1187–89 (D.C.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985) (statute governing licensure of educational institutions sufficiently clear as to put applicant on notice and was not impermissibly vague).

fund's liability. To have concluded otherwise would make the Fund the primary source of recovery. In short, the agency's determination is in accord with the Fund's directive to benefit only victims who "would not otherwise be compensated for his or her loss." D.C.Code § 35–2114(a).

Further, the Superintendent, after finding that "collateral sources" include payments from "'any potential civil action based on the liability of another person,'" citing 26 DCMR § 1803.4, 35 D.C.Reg. 7685 (1988), concluded that the full settlement amount should have been deducted from the award since it constituted a "collateral source." *See* D.C.Code § 35–2114(e) (sum available shall be the amount of loss less all amounts received from collateral sources). Regulations implementing the Fund provide that a claimant, in filing for an award from the Fund, must list in the application, *inter alia*, "[c]ollateral sources of income or payment of benefits." 26 DCMR § 1803.3(i), 35 D.C.Reg. 7685 (1988). "Collateral sources" are defined as including, "but [are] not limited to":

(a) Proceeds from an accident policy;

(b) Payments for a health benefits or group health plan;

(c) Medicare or medicaid;

(d) Any other plan or system of payment providing compensation, including but not limited to medical and rehabilitative expenses, wage continuation, or loss benefit or funeral benefits for injury or death as a result of an accident; and

(e) *Any potential civil action based on the liability of another person,* unless a determination is made by the Administration that such civil action would not result in compensating the victim.

26 DCMR § 1803.4, 35 D.C. Reg. 7685 (emphasis added).[4] The agency's determination is entirely consistent with D.C.Code § 35–2114 and the implementing regulations since the settlement, the outcome of a "civil action"—in this case an adversary proceeding in bankruptcy court—"based on the liability of another person," is a collateral source that must be deducted from any potential award from the Fund pursuant to D.C.Code § 35–2114(e).[5] 26 DCMR § 1803.4(e), 35 D.C. Reg. 7685.

In sum, we conclude that the agency's determination is not plainly wrong or inconsistent with D.C.Code § 35–2114 and the implementing regulations. *See Hager v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 475 A.2d 367, 368 (D.C.1984) (agency's determination is controlling unless it is unreasonable or inconsistent with statute) (citations omitted); *Totz v. District of Columbia Rental Accommodations Comm'n,* 412 A.2d 44, 46 (D.C.1980) (determination is controlling unless it is plainly erroneous or inconsistent with statute) (citation omitted). Accordingly, we affirm the agency's order.

*So ordered.*

---

**4.** At oral argument, petitioner contended for the first time that the agency exceeded its statutory authority in promulgating the regulations. Since the issue was not raised before the agency, we need not consider it. *See Hughes v. District of Columbia Dep't of Employment Servs.,* 498 A.2d 567, 570 (D.C.1985) ("Administrative and judicial efficiency require that all claims be first raised at the agency level to allow appropriate development and administrative response before judicial review.") (citations and footnote omitted); *Smith v. Police & Firemen's Retirement & Relief Bd.,* 460 A.2d 997, 999 (D.C.1983) (this court does not consider claims raised for the first time on review of agency determination) (citations omitted). We note, however, that this court generally defers to an agency's "reasonable construction of the regulatory statute ... whether the agency construes and refines the statute through rule making or adjudication." *Hughes,*

*supra,* 498 A.2d at 570 (citations omitted). *See also Hanson v. District of Columbia Rental Hous. Comm'n,* 584 A.2d 592, 595 (D.C.1991) (agency's regulation is invalid only if it is "in conflict with the statutes, beyond the statutory authority of an agency, or violates jurisdictional doctrines") (citations omitted).

**5.** Petitioner also argues that the settlement amount should not be deducted because the settlement payments are an indefinite source of recovery since the driver may default in making payments at some point in the future. In response, government counsel acknowledged at oral argument that in the event of such a default, petitioner would be permitted to reopen the matter before the agency and seek additional payments from the Fund to offset any default by the uninsured motorist.